## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 Proceeding |
| LORRAINE ADRIENNE DYBA, | ) | |
| | ) | Case No.:  18-81138 |
| Debtor. | ) | |

### NOTICE OF HEARING

Notice is hereby given that a hearing in said cause will be held before The Honorable Thomas M. Lynch, U.S. Bankruptcy Court, 327 S. Church Street, Rockford, Illinois 61101, on the 18th day of June 2018, at 9:30 a.m. to consider and act upon the following matters:

### MOTION TO ABSTAIN

MARK JOACHIM, Movant
By WARD, MURRAY, PACE & JOHNSON, P.C.
His Attorneys


By_____/s/ Paul A. Osborn_____

Paul A. Osborn – ARDC #3127571
WARD, MURRAY, PACE & JOHNSON, P.C.
Attorneys for Mark Joachim
202 East Fifth Street
P.O. Box 400
Sterling, IL  61081
(815) 625-8200
osborn@wmpj.com

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 Proceeding |
| LORRAINE ADRIENNE DYBA, | Case Number: 18-81138 |
| Debtor | Judge Thomas M. Lynch |

## CERTIFICATE OF SERVICE

**TO:**    Ms. Lorraine A. Dyba, P.O. Box 964, Dixon, IL  61021

      The undersigned, an attorney, hereby certifies that I have served a copy of the attached <u>Notice of Hearing</u> upon the Party listed above by causing the same to be mailed in a properly addressed envelope, by first class mail, postage prepaid, from 202 East 5th Street, Sterling, IL, before 5:00 p.m. on June 14, 2018.

                                /s/ Paul A. Osborn
                         Paul A. Osborn – ARDC #3127571
                         WARD, MURRAY, PACE & JOHNSON, P.C.
                         Attorney for Movant, Mark Joachim
                         202 East Fifth Street, P.O. Box 400
                         Sterling, IL  61081-0400
                         (815) 625-8200
                         osborn@wmpj.com

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

IN RE:        )
           )  Chapter 7 Proceeding
           )
LORRAINE ADRIENNE DYBA, )
           )  Case No.:  18-81138
  Debtor.      )

## MOTION TO ABSTAIN

To: The Honorable Thomas M. Lynch
   Bankruptcy Judge

   Mark Joachim, by his attorneys, Ward, Murray, Pace & Johnson, P.C., hereby moves the Court for an Order as follows:

## BACKGROUND AND FACTS

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1334 and 11 U.S.C. Section 362.

2. Lorraine Adrienne Dyba, f/k/a Lorraine Joachim (Debtor) filed her petition under Chapter 7 of the Bankruptcy Code on May 26, 2018.

3. James E. Stevens was duly appointed trustee herein.

4. The Debtor and Movant, Mark Joachim ("MARK"), are parties to a divorce proceeding in the Circuit Court of the Fifteenth Judicial Circuit, Lee County, Illinois, captioned *"In re the Marriage of Lorraine Dyba, f/k/a Lorraine Joachim, Petitioner/Counter-Respondent v. Mark Joachim, Respondent/Counter-Petitioner*, No. 2017 D 70 (hereinafter, the "Divorce Proceeding").

5. In the Divorce Proceedings, the Court took testimony on April 26, 2018 and May 17, 2018, and took under advisement the issues of division of the parties' marital assets.  Pursuant to 11 U.S.C. 362(a) and (b)(2)(A)(iv), relief from stay is required for the Court to rule on those matters under advisement.  Judge Ackert admitted into evidence both testimony and exhibits

regarding marital and non-marital property, asset valuations, debt balances, the parties' health and considered allegations of dissipation and a claim to maintenance.

6.     That 28 U.S.C. § 1334(c) governs abstention in bankruptcy cases and (c)(1) grants a bankruptcy court discretion as to whether it will adjudicate certain matters.

7.     That the U.S. Court of Appeals for the Seventh Circuit has employed twelve factors to guide a bankruptcy court in determining whether a motion for permissive abstention should be granted in *In re Chicago, Milwaukee, St. Paul Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir., 1993), as follows:

(i)     the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(ii)     the extent to which state law issues predominate over bankruptcy issues;

(iii)     the difficulty or unsettled nature of the applicable law;

(iv)     the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(v)     the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(vi)     the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(vii)     the substance rather than form of an asserted "core" proceeding;

(viii)     the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(ix)     the burden of (the bankruptcy court's) docket;

(x)     the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(xi)     the existence of a right to a jury trial; and

(xii)     the presence in the proceeding of non-debtor parties.

8.     The Divorce Proceeding started on September 27, 2017, when Debtor filed her Petition for Dissolution.  Subsequent to the filing, there have been 16 court appearances by the parties and/or their counsel including on motions for temporary relief, injunctive relief, attorneys' fees, discovery issues, grounds and, most recently, two days of trial on the issues of disposition of property and maintenance on April 26, 2018 and May 17, 2018.  The records of the Lee County Circuit Clerk, accessible on its Full Court Enterprise internet page, are attached hereto as Abstention Exhibit A – the "Civil Hearing Summary" and Abstention Exhibit B – the "ROA (Record on Appeal) Summary."

9.     Abstention Exhibit B reports the minute entries made by the Court in the Divorce Proceeding file reflecting that during the 2-day trial, the Court heard four witnesses and admitted 63 exhibits into evidence – 29 on April 26 and another 34 on May 17, 2018.

10.     The Divorce Proceeding included a pretrial on February 14, 2018, at which Judge Ackert set March 16, 2018 as the date for the "prove-up" of grounds and the entry of a Judgment for Dissolution which, while granting the dissolution and dissolving the marriage, reserved the issues of division of property and of maintenance.  The entry of the Judgment on March 16, 2018 fixed the date of the determination of marital vs. non-marital property and fixed the date for valuation of all assets and the amount of debt.  This was done quite intentionally since the

3

husband in the Divorce Proceeding was a farmer and about to borrow more money to plant a crop and that would have further complicated valuation issues.

11.    Prior to the trial date, the parties were required to file final pretrial memorandums, using the Judgment date of March 16, 2018 as a "snapshot" of the assets and debts. The Debtor, who as part of the Judgment entered March 16 had been restored to her maiden name, "Lorraine Dyba," filed her Pretrial Memorandum on April 23, 2018. It is attached as Abstention Exhibit C. In summary, Debtor asserted in her Pretrial Memorandum that she had under $10,000.00 in non-marital assets, but a claimed interest in marital assets including a residence and crops valued in excess of $330,000.00, plus claimed dissipation.

12.    Movant, Mark Joachim, filed his "Revised Final Pretrial Memorandum" on April 20, 2018. It is attached as Abstention Exhibit D. In summary, Mr. Joachim asserted that there was no net marital estate to divide because of the increase in marital debt.

13.    Following the two days of trial on April 26 and May 17, the Court set a schedule for the filing of Closing Arguments. Movant, Mark Joachim, filed his Closing Argument on May 24, 2018, a copy of which is attached as Abstention Exhibit E. In summary, it argues that the Debtor should not be awarded any maintenance, that there was no dissipation and that there was no net marital estate to award to the Debtor.

14.    The present stage of the Divorce Proceeding impacts the following factors in considering whether permissive abstention should be granted:

    (i)    "the effect on the efficient administration of the estate" – once the state court applies Illinois law to the facts heard in trial and awards specific property or payments to the Debtor, the respective rights of the parties and thus of the bankruptcy estate to those assets will be clarified without the need for additional litigation in bankruptcy court to make those determinations;

4

(ii)    "the extent to which state law issues predominate over bankruptcy issues" – as between the rights of the husband and wife in a dissolution, the division of assets, when only one is the bankruptcy debtor, and the largest potential assets of the bankruptcy estate are contested in the divorce, specifically, crop proceeds and home value, the divorce issues – as reflected in the two pretrial memos of the parties, suggest that the disposition of the divorce could increase or decrease the value of the bankruptcy estate by several hundred thousand dollars;

(iii)    "the difficulty or unsettled nature of the applicable law" – the Debtor is, in the Divorce Proceeding, as discussed in Mr. Joachim's Closing Argument (Abstention Exhibit E), seeking over $200,000.00 characterized as "in lieu of maintenance." Illinois' maintenance statute, 750 ILCS 5/504, was extensively revised in 2015 with no appellate court decision yet as to a lump sum payment "in lieu of maintenance." The characterization of a lump sum payment as either property or maintenance would have significant implications both inside and outside of bankruptcy. The determination of the Debtor's interest in crops grown on non-marital farmland using non-marital equipment is also a complex issue requiring the application of detailed facts to the applicable statute. The law and facts regarding a claim arising from "dissipation" is unique to Illinois divorce law;

(iv)    "the presence of a related proceeding commenced in state court" – as expressed – the Divorce Proceeding has been extensively litigated and is at the point of a final decision;

(v)    "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case" – the decision of the divorce court will, in large part, define the Debtor's interest in significant assets to which she and her ex-spouse both claim;

(vi)    "the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court" – it certainly seems feasible for the divorce court to issue its ruling and for the bankruptcy trustee to

5

assert the estate's interest in estate property thereafter. The Trustee has indicated a desire to allow that process to occur.

The remaining factors to be weighed are not materially impacted by the decision to abstain, e.g. the existence of the right to a jury trial or the burden on the bankruptcy court's docket.

WHEREFORE, Movant, Mark Joachim, respectfully requests the Court enter an Order:

1.      Finding that the factors presented by Debtor's pending Divorce Proceeding support this Court abstaining from exercising jurisdiction over the issues presented in that Proceeding, specifically, Case No. 2017 D 70 in the Circuit Court of the Fifteenth Judicial Circuit, Lee County, Illinois, until that Court has entered a ruling and/or a Supplemental Judgment;

2.      Said abstention would be conditioned upon the Bankruptcy Trustee obtaining an Order authorizing the hiring of an attorney to intervene in the Divorce Proceeding and be entitled to receive notice of all pleadings and hearings and to reschedule the Section 341 meeting until after the ruling in the Divorce Proceeding; and

3.      For such further relief as is just and proper.

MARK JOACHIM, Movant
By WARD, MURRAY, PACE & JOHNSON, P.C.
His Attorneys

By_____/s/ Paul A. Osborn_____

Paul A. Osborn – ARDC #3127571
WARD, MURRAY, PACE & JOHNSON, P.C.
Attorneys for Mark Joachim
202 East Fifth Street
P.O. Box 400
Sterling, IL  61081
(815) 625-8200
osborn@wmpj.com

Lee County Circuit Court

| SEARCHES | CASES | SCHEDULING | | LOGOU |
|---|---|---|---|---|

Public : 2017D00070UK· Civil Case Status Summary· Civil Hearing Summary

**CIVIL CASE**

Civil Case
Civil Case Status
Civil Hearings
Civil Judges
Judgment/Orders
Old Financial History
ROA

CIVIL HEARING SUMMARY    ▸ 2017D00070UK    Lorraine Joachim et al. vs. Mark Joachim et al.    CASE STATUS  ▸ Pending

Aug 4, 201

CONTINUANCE ONLY    ☐

1 - 17 of 1

| HEARING TYPE | JUDGE | COURT ROOM | START DATE ▲ | PARTICIPANTS / OFFICERS | FTA | RESULT |
|---|---|---|---|---|---|---|
| Motion/Petition | Jacquelyn D Ackert | D | 09/27/2017 - 11:00 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Court Date Stricken |
| Motion/Petition | Jacquelyn D Ackert | D | 10/06/2017 - 10:30 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Cause Continued |
| Hearing | Jacquelyn D Ackert | D | 10/30/2017 - 10:30 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Order Submitted |
| CH-L-F Progress Call | Jacquelyn D Ackert | D | 11/14/2017 - 09:00 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Cause Continued |
| Status | Jacquelyn D Ackert | D | 12/11/2017 - 11:00 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Order Submitted |
| Status | Jacquelyn D Ackert | D | 01/04/2018 - 11:00 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Cause Continued |
| Hearing | Jacquelyn D Ackert | D | 02/05/2018 - 08:45 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Order Submitted |
| Pretrial Conference | Jacquelyn D Ackert | D | 02/14/2018 - 02:00 PM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS<br>OFFICERS | ☐<br>☐ | Cause Continued |
| Petition Hearing | Jacquelyn D Ackert | D | 02/21/2018 - 11:00 AM | ▼ PARTICIPANTS<br>PARTICIPANTS<br>Mark Joachim (Defendant)<br>Lorraine Joachim (Plaintiff)<br>▼ OFFICERS | ☐<br>☐ | Cause Continued |

Abstention
Exhibit
A

| | | | | OFFICERS | |
|---|---|---|---|---|---|
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Phase I Hearing | Jacquelyn D Ackert | D | 03/16/2018 - 10:00 AM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | Order Submitted |
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Petition Hearing | Jacquelyn D Ackert | D | 03/16/2018 - 10:00 AM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | Order Submitted |
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Phase II Hearing | Jacquelyn D Ackert | D | 04/26/2018 - 09:30 AM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | Cause Continued |
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Petition Hearing | Jacquelyn D Ackert | D | 04/26/2018 - 09:30 AM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | Cause Continued |
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Hearing | Jacquelyn D Ackert | D | 05/17/2018 - 01:00 PM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | Order Submitted |
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Motion/Petition | Jacquelyn D Ackert | D | 05/23/2018 - 01:00 PM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | Court Date Stricken |
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Motion/Petition | Jacquelyn D Ackert | D | 05/25/2018 - 01:00 PM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | |
| | | | | ☑ PARTICIPANTS **PARTICIPANTS**                    FTA | |
| Petition Hearing | Jacquelyn D Ackert | D | 06/21/2018 - 01:00 PM | Mark Joachim (Defendant) ☐<br>Lorraine Joachim (Plaintiff) ☐<br>☑ OFFICERS<br>OFFICERS | |

**REFRESH**    **CANCEL**



Lee County Circuit Court

SEARCHES    CASES    SCHEDULING                                                    LOGOUT

Public : 2017D00070UK· Civil Case Status Summary· ROA Summary

**CIVIL CASE**
Civil Case
Civil Case Status
Civil Hearings
Civil Judges
Judgment/Orders
Old Financial History
ROA

**ROA SUMMARY** ▸ 2017D00070UK    Lorraine Joachim et al. vs. Mark Joachim et al.    **CASE STATUS** ▸ Pending - Aug 4, 2017

SORT DATE ○ Ascending ○ Descending

Advanced Search ▸

◂◂ ◂  1 - 50 of 110  ▸ ▸▸

SEL ▸ ☐ *DATE ▸ 06/06/2018   CODE ▸ CT HRST CV *JUDGE ▸ Ackert, Jacquelyn D
         *TEXT ▸ * Next Appearance: Petition Hearing , June 21, 2018 at 1:00 PM in Courtroom D with Judge Jacquelyn D Ackert.
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 06/06/2018   CODE ▸ NO HEAR *JUDGE ▸ No Judge
         *TEXT ▸ Notice of Hearing filed by Atty P Osborn
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 06/06/2018   CODE ▸ CT MPMP *JUDGE ▸ No Judge
         *TEXT ▸ Petition for Adjudication of Civil Contempt filed by Atty P Osborn
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 05/25/2018   CODE ▸ OTHER *JUDGE ▸ No Judge
         *TEXT ▸ Copy of Bill filed - Bill mailed to Attorney Thomas Laz - Proof Attached
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 05/25/2018   CODE ▸ OTHER *JUDGE ▸ No Judge
         *TEXT ▸ Copy of Notice of Appeal and Record Sheet given to Court Reporters
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 05/25/2018   CODE ▸ OTHER *JUDGE ▸ No Judge
         *TEXT ▸ Filing Accepted by the Appellate Court - Proof filed
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 05/24/2018   CODE ▸ OTHER *JUDGE ▸ No Judge
         *TEXT ▸ Mark Joachim's Closing Argument filed by Attorney Paul Osborn
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 05/22/2018   CODE ▸ HR STRK *JUDGE ▸ Ackert, Jacquelyn D
         *TEXT ▸ Per DH* Hearing Result: Cause comes on for Motion/Petition . Court Date Stricken
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 05/22/2018   CODE ▸ CT HRST CV *JUDGE ▸ Ackert, Jacquelyn D
         *TEXT ▸ Per DH* Next Appearance: Motion/Petition , May 25, 2018 at 1:00 PM in Courtroom D with Judge Jacquelyn D Ackert.
         SEALED ▸ ☐
         ACTION TYPE ▸

SEL ▸ ☐ *DATE ▸ 05/22/2018   CODE ▸ CT MISC *JUDGE ▸ Ackert, Jacquelyn D
         *TEXT ▸ Received $3.00 for Certified Copies-1st Page(3.00) paid by Lorraine Joachim. Receipt # 850832

Abstention
Exhibit
B

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 05/21/2018 CODE ▸ CT HRST CV *JUDGE ▸ No Judge

*TEXT ▸ * Next Appearance: Emergency Motion/Petition , May 23, 2018 at 1:00 PM in Courtroom D with Judge Jacquelyn D Ackert.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 05/21/2018 CODE ▸ CT NOMT *JUDGE ▸ No Judge

*TEXT ▸ Document Filed:Emergency Notice of Motion

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 05/21/2018 CODE ▸ MP ENTR *JUDGE ▸ No Judge

*TEXT ▸ Emergency Motion to Reconsider or Stay the Court's Ruling on Respondent/Counter Petitioner's Petition for Allocation of Use of the Marital Residence Pursuant to Supreme Court Rule 305 filed by atty Thomas Laz

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 05/21/2018 CODE ▸ OTHER *JUDGE ▸ No Judge

*TEXT ▸ Notice of Appeal filed by Atty Thomas Laz

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 05/17/2018 CODE ▸ MINUTES *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸ * Court Proceedings:
Continuation of Hearing dated 04/26/18.
Plaintiff called, sworn and testimony taken.
Pltf's Ex #25 (Letter) Identified Only.
Pltf's Ex #25A (Medical History) admitted w/o objection.
Pltf's Ex #12 (Toyota Corolla Contract) admitted w/o objection.
Pltf's Ex #26 (Property List) admitted w/o objection.
Pltf's Ex #47 (SVB Promissory Note) admitted w/o objection.
Pltf's Ex #7 (SVB Summary of Accounts) admitted w/o objection.
Pltf's Ex #7A (SVB Demonstrative).
Pltf's Ex #7B (SBV Demonstrative).
Pltf's Ex #7C (SVB Demonstrative).
Pltf's Ex #27 (Credit Report) Identified Only.
Pltf's Ex #29 (Equifax Credit Report) admitted w/o objection.
Pltf's Ex #30 (FNB of Amboy Denial Letter) admitted w/o objection.
Pltf's Ex #11A (FNB of Amboy Residential Loan Application) admitted w/o objection.
Pltf's Ex #32 (Chase Bank Statements) admitted w/o objection.
Pltf's Ex # 32A (Chase Bank Demonstrative).
Pltf's Ex #32B (Chase Bank Demonstrative).
Pltf's Ex #32C (Chase Bank Demonstrative).
Pltf's Ex #34 (US Bank Records) admitted w/o objection.
Pltf's Ex #34A (US Bank Demonstrative).
Pltf's Ex #34B (US Bank Demonstrative).
Pltf's Ex #34C (US Bank Demonstrative).
Pltf's Ex #35 (US Bank Credit Card) admitted w/o objection.
Pltf's Ex #35A (US Bank Credit Card Demonstrative).
Pltf's Ex #35B (US Bank Credit Card Demonstrative).
Pltf's Ex #35C (US Bank Credit Card Demonstrative).
Pltf's Ex #36 (2017 Tax Return - Lorraine Joachim) admitted w/o objection.
Pltf's Ex #37 (Financial Affidavit) Identified Only.
Pltf's Ex #38 (Requested Marital Property Items Demonstrative).
Pltf's Ex #39 (Non-Marital Items Demonstrative).
Pltf's Ex #16 (Answers to Interrogatories) Identified Only.
Pltf's Ex #41A (Walmart Receipt) admitted w/o objection.
Pltf's Ex #41B (US Bank Statement) admitted w/o objection.
Pltf's Ex #41C (HDTV Receipt) admitted w/o objection.
Pltf's Ex #40 (Bedroom Expressions Receipt) admitted w/o objection.

* Court Attendees: Presidi

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 05/17/2018 CODE ▸ MINUTES *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸ * Court Proceedings:
Pltf's Ex #15 (CSB Bank Account Statements) admitted w/o objection.
Pltf's Ex #15A (CSB Demonstrative).
Pltf's Ex #15B (CSB Demonstrative).
Pltf's Ex #15C (CSB Demonstrative).
Pltf's Ex #14 (CSB Bank Account Statements) admitted w/o objection.
Pltf's Ex #14A (CSB Demonstrative).
Pltf's Ex #13 (CSB Demonstrative).
Pltf's Ex #13A (CSB Bank Account Statements) admitted w/o objection.
Rebuttal Witness Defendant/Counter Plaintiff called, sworn and testimony taken.
Written Argument to be submitted.
Court to issue a Written Opinion.
Petition for Allocation of Use of Marital Residence heard.
Arguments of Parties heard.

Court's ruling read into record.
Order entered.

* Court Attendees: Presiding Judge: Jacquelyn D Ackert. Private Attorney, Thomas J Laz, appears with Plaintiff, Lorraine Joachim. Private Attorney, Paul Osborn, appears with Defendant, Mark Joachim. Also attending: Lori Middleton Court Reporter; J.F. Court Clerk.

SEALED ▸ ☐

ACTION TYPE ▸

| SEL ▸ ☐ | *DATE ▸ 05/17/2018 | CODE ▸ HR ORSU | *JUDGE ▸ Ackert, Jacquelyn D |

*TEXT ▸  * Hearing Result: Cause comes on for Hearing . Order submitted.

SEALED ▸ ☐

ACTION TYPE ▸

| SEL ▸ ☐ | *DATE ▸ 05/17/2018 | CODE ▸ JG AGRE | *JUDGE ▸ Ackert, Jacquelyn D |

*TEXT ▸                Order filed

SEALED ▸            ☐

ACTION TYPE ▸

| SEL ▸ ☐ | *DATE ▸ 04/26/2018 | CODE ▸ MINUTES | *JUDGE ▸ Ackert, Jacquelyn D |

*TEXT ▸ * Court Proceedings:
Hearing held on All Remaining Issues
Opening Statements of parties heard
Witness (Gary Wagenacht) called, sworn and testimony taken
Plaintiff/Counter Respondent called, sworn and testimony taken
Counter-Petitioner's Ex #1 (2015 Joint Tax Return) identified
Counter-Petitioner's Ex #2 (2016 Joint Tax Return) identified
Respondent/Counter Petitioner called, sworn and testimony taken
Counter-Petitioner's Ex #3 (ALTA Settlement Statement) identified
Counter-Petitioner's Ex #4 (Promissory Note) identified
Counter-Petitioner's Ex #5 (Group-Farm Credit Service Statements) identified
Counter-Petitioner's Ex #6 (2015 Farm Business Record) identified
Counter-Petitioner's Ex #7 (FBFM Report 2015 Report) identified
Counter-Petitioner's Ex #8 (FBFM Report 2016 Report) identified
Break for lunch
Back on Record/All Previously Identified Parties Present
Witness (John Rosengren) called, sworn and testimony taken
Respondent/Counter Petitioner recalled, still under oath, testimony taken
Counter-Petitioner's Ex #9 (Community State Bank Lender Agreement) identified
Counter-Petitioner's Ex #10 (Auction Flyer) identified
Counter-Petitioner's Ex #11 (US Bank Statements) identified
Counter-Petitioner's Exhibits 1-11 admitted without objection
Counter-Petitioner's Ex #12 (2017 Tax Return - Mark Joachim) identified
Counter-Petitioner's Ex #13 (FBFM 2017) identified
Counter-Petitioner's Exhibits 12-13 admitted without objection
Petitioner's Ex #3 (Loan Application) identified
Petitioner's Ex #4 (Appraisal Report) identified
Petitioner's Ex #5A (FBFM 2017 Report) identified
Petitioner's Ex #6 (Appraisal) identified
Petitioner's Ex #7 (Sauk Valley Bank Ledger) identified
Petitioner's Ex #8 (Sauk Valley Bank Loan Application) identified
Petitioner's Ex #10 (Land Contract) identified
Petitioner's Ex #11 (Land Offer) identified
Petitioner's Ex #11A (Amboy Bank Loan Application) identified
Petitioner's Ex #13 (Demonstrative Summary) identified

SEALED ▸ ☐

ACTION TYPE ▸

| SEL ▸ ☐ | *DATE ▸ 04/26/2018 | CODE ▸ MINUTES | *JUDGE ▸ Ackert, Jacquelyn D |

*TEXT ▸ * Court Proceedings:
Petitioner's Ex #13A (Community State Bank Statements) identified
Petitioner's Ex #14 (Community State Bank Statements) identified
Petitioner's Ex #15 (Community State Bank Joint Account Statements) identified
Petitioner's Ex #16 (Answers to Interrogatories) identified
Petitioner's Ex #21 (Notice of Dissipation) identified
Counter-Petitioner's Ex #14 (Checks) identified
Hearing continued to 05/17/18 at 1:00 p.m.

* Court Attendees: Presiding Judge: Jacquelyn D Ackert. Private Attorney, Thomas J Laz, appears with Plaintiff, Lorraine Joachim. Counter Defendant, Lorraine Joachim failed to appear. Private Attorney, Paul Osborn, appears with Defendant, Mark Joachim. Also attending: Deb Deets Court Reporter; J.F. Court Clerk.

SEALED ▸ ☐

ACTION TYPE ▸

| SEL ▸ ☐ | *DATE ▸ 04/26/2018 | CODE ▸ HR CACO | *JUDGE ▸ Ackert, Jacquelyn D |

*TEXT ▸  * Hearing Result: Cause comes on for Petition Hearing . Cause Continued.

SEALED ▸ ☐

ACTION TYPE ▸

| SEL ▸ ☐ | *DATE ▸ 04/26/2018 | CODE ▸ HR CACO | *JUDGE ▸ Ackert, Jacquelyn D |

*TEXT ▸  * Hearing Result: Cause comes on for Phase II Hearing . Cause Continued.

SEALED ▸ ☐

ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/26/2018   CODE ▸ CT HRST CV *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸   * Next Appearance: Hearing , May 17, 2018 at 1:00 PM in Courtroom D with Judge Jacquelyn D Ackert.
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/25/2018   CODE ▸ AM NOTE *JUDGE ▸ No Judge

*TEXT ▸   Amended Notice of Hearing filed
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/25/2018   CODE ▸ MP AMED *JUDGE ▸ No Judge

*TEXT ▸   Amended Petition for Allocation of Use of Marital Residence filed by atty Paul Osborn
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/24/2018   CODE ▸ CT NOMT *JUDGE ▸ No Judge

*TEXT ▸   Document Filed: Notice of Motion/Proof Of Service Filed By ATTY. Thomas J. Laz.
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/24/2018   CODE ▸ MP ENTR *JUDGE ▸ No Judge

*TEXT ▸   Motion to Strike Respondent/Counter Petitioner's Petition for Allocation of Use of the Marital Residence filed by atty Thomas Laz
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/23/2018   CODE ▸ CT DDDF *JUDGE ▸ No Judge

*TEXT ▸   Document Filed: PreTrial Memorandum Filed By ATTY. Thomas J. Laz.
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/20/2018   CODE ▸ CT DDDF *JUDGE ▸ No Judge

*TEXT ▸   Document Filed: Revised Final Pretrial Memorandum Filed By ATTY. P. Osborn.
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/19/2018   CODE ▸ CT HRST CV *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸   Next Appearance: Petition Hearing , April 26, 2018 at 9:30 AM in Courtroom D with Judge Jacquelyn D Ackert.
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/19/2018   CODE ▸ NO HEAR *JUDGE ▸ No Judge

*TEXT ▸   Notice of Hearing filed by Atty P Osborn
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 04/19/2018   CODE ▸ CT MPMP *JUDGE ▸ No Judge

*TEXT ▸   Petition for Allocation of Use of Marital Residence filed by Atty P Osborn
SEALED ▸ ☐
ACTION TYPE ▸

SEL ▸ ☐  *DATE ▸ 03/16/2018   CODE ▸ MINUTES *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸   * Court Proceedings: Prove - Up Hearing Held
Pltf. withdraws her petition - Parties proceed on the Counter Petition
Rspd. called, sworn in, and testimony heard
Court find grounds
Judgment entered
Case remains set for April 26, 2018

* Court Attendees: Presiding Judge: Jacquelyn D Ackert. Private Attorney, Thomas J Laz, appears with Plaintiff, Lorraine Joachim. Private Attorney, Paul Osborn, appears with Defendant, Mark Joachim. Also attending: Dionne Horner Court Reporter; S.L. Court Clerk.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 03/16/2018 CODE ▸ JG AGRE *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸ Judgment for Dissolution of Marriage filed

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 03/15/2018 CODE ▸ CT MPMP *JUDGE ▸ No Judge

*TEXT ▸ Motion to Withdraw Petition for Dissolution of Marriage filed by Atty T Laz

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/26/2018 CODE ▸ CT PROS *JUDGE ▸ No Judge

*TEXT ▸ Proof of Service Filed By ATTY. Thomas J. Laz.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/21/2018 CODE ▸ MINUTES *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸ * Court Proceedings:
Arguments of parties heard
Request for attorneys fees to be heard on 04/26/18 at Phase II Hearing

* Court Attendees: Presiding Judge: Jacquelyn D Ackert. Private Attorney, Thomas J Laz, appears with Plaintiff, Lorraine Joachim. Private Attorney, Paul Osborn, appears for Defendant, Mark Joachim. Also attending: Dionne Horner Court Reporter; J.F. Court Clerk.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/21/2018 CODE ▸ HR CACO *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸ Hearing Result: Cause comes on for Petition Hearing . Cause Continued.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/21/2018 CODE ▸ CT HRST CV *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸ Next Appearance: Petition Hearing , March 16, 2018 at 10:00 AM in Courtroom D with Judge Jacquelyn D Ackert.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/21/2018 CODE ▸ OTHER *JUDGE ▸ No Judge

*TEXT ▸ Motion for Evidentiary Hearing filed by Attorney Paul Osborn

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/21/2018 CODE ▸ NO HEAR *JUDGE ▸ No Judge

*TEXT ▸ Notice of Hearing filed by Attorney Paul Osborn

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/20/2018 CODE ▸ CT HRST CV *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸ Next Appearance: Petition Hearing , February 21, 2018 at 11:00 AM in Courtroom D with Judge Jacquelyn D Ackert.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/20/2018 CODE ▸ CT NOMT *JUDGE ▸ No Judge

*TEXT ▸ Notice of Motion filed by Atty T Laz

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐ *DATE ▸ 02/20/2018 CODE ▸ CT MPMP *JUDGE ▸ No Judge

*TEXT ▸    Petition for Temporary Attorneys Fees filed by Atty T Laz

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐   *DATE ▸ 02/20/2018   CODE ▸ CT MPMP   *JUDGE ▸ No Judge

*TEXT ▸    Petition for Temporary Relief for Payment of Marital Expenses filed by Atty T Laz

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐   *DATE ▸ 02/14/2018   CODE ▸ MINUTES   *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸    * Court Proceedings:
Done outside of court
Deadline for filing updated Pre-Trial Memorandums and Financial Affidavits is 04/12/18
Part I Hearing set for 03/16/18 at 10:00 a.m.
Trial for all Part II Hearing set for 04/26/18 at 9:30 a.m.

* Court Attendees: Presiding Judge: Jacquelyn D Ackert. Private Attorney, Thomas J Laz, appears with Plaintiff, Lorraine Joachim. Private Attorney, Paul Osborn, appears for Defendant, Mark Joachim. NCC.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐   *DATE ▸ 02/14/2018   CODE ▸ HR CACO   *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸    Hearing Result: Cause comes on for Pretrial Conference . Cause Continued.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐   *DATE ▸ 02/14/2018   CODE ▸ CT HRST CV   *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸    Next Appearance: Phase I Hearing , March 16, 2018 at 10:00 AM in Courtroom D with Judge Jacquelyn D Ackert.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐   *DATE ▸ 02/14/2018   CODE ▸ CT HRST CV   *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸    Next Appearance: Phase II Hearing , April 26, 2018 at 9:30 AM in Courtroom D with Judge Jacquelyn D Ackert.

SEALED ▸ ☐

ACTION TYPE ▸

---

SEL ▸ ☐   *DATE ▸ 02/05/2018   CODE ▸ JG AGRE   *JUDGE ▸ Ackert, Jacquelyn D

*TEXT ▸    Order filed (02/05/18)

SEALED ▸    ☐

ACTION TYPE ▸

---

◼◼ 1 - 50 of 110 ▶ ▶|

[ LIST ]  [ REFRESH ]  [ CANCEL ]

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT**
**LEE COUNTY, ILINOIS**

| | |
|---|---|
| IN RE MARRIAGE OF: | ) |
| | ) |
| **LORRAINE JOACHIM** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| And | ) No. 17D 70 |
| | ) |
| **MARK JOACHIM** | ) |
| | ) |
| Respondent. | ) |

**PRETRIAL MEMORANDUM**

PETITIONERS STATEMENT OF FACTS.

1. The parties were married on Sept 12, 2015

2. The Petitioner is age 60. The Respondent is age 67.

3. Petitioner's income consists solely of her SSDI income of a net of $11,252. 00 yearly

4. Respondent's income consists of his Social Security income of $11,100.00 yearly, rental income of $19,800.00 and dividend  and interest income of about $10,000.00 yearly and net farm income.

5 Petitioner has a myriad of health problems which resulted in her being qualified as disabled before the parties were married. Petitioner is unemployable.

6. Respondent's per his Interrogatories reports he has no health problems that interfere with any work activities.

7. Petitioner has non-marital property consisting of various items of clothing and many household goods, gifts, and her 2015 Toyota, all with a net value of less than $10,000.00 and marital property consisting of the Dixon Residence, claim for dissipation and attached as Exhibit "A" is her list of marital property she desires awarded to her.

8. Respondent has a gross worth consisting $4,469,554.00 and liabilities of $2,158,131.00.  This is made up of 5 parcels of farmland of about 300 acres, $250,000 in stocks

Abstention
Exhibit
C

and farm equipment, a 2008 Chevy Silverado Truck, and marital residence in Dixon worth $209,000.00. Vehicles and Farm Equipment have a worth of $450,000.00. Respondent's net worth is $2,311,423.00.

9. The marital property of the parties consists of the marital residence in Dixon, Illinois valued at $209,000.00, purchased in June, 2017. The parties took out a promissory note of $209,000.00 to purchase the residence which the Respondent unilaterally paid off in August of 2017 without notice to the Petitioner and which was collateralized by an agricultural security agreement on farm inventory, crops, and equipment. There is no mortgage on the residence. It is owned free and clear. The Respondent is a farmer and has spent in excess of $300,000.00 of marital income paying interest and principal on his non-marital property. Respondent has also dissipated about $37,000.00 in cash since the marriage started breaking down in November 2015 and caused the loss of $46,000.00 from the sale of the previous marital residence. As of the beginning of the year Respondent had about $90,000 in personal accounts that consists of the incomes from the sale of the 2017 farm crops. The value of the marital estate is about in excess of $330,000.00 plus and the value of any stored grain.

10. The Petitioner has debt consisting of owing about $7,039.00 on the 2015 Toyota and about $18,000.00 in credit card debt. The Petitioner also signed a joint note with the Respondent to pay off credit card debt. Respondent has been paying that.

## RECOMMENDATIONS FOR SETTLEMENT

The following elements of the division of property apply pursuant to Section 503 of the Dissolution Act.

(1) property acquired by gift, legacy or descent or property acquired in exchange for such property;

a) Petitioner acquired virtually all of the personal property in the marital residence before the marriage except for certain furniture, including a stove recently gifted to her and a piano. All this property should be awarded to the Petitioner as her non-marital property.

b) Respondent acquired all the parcels of farmland before the marriage and borrowed against the parcels to purchase his truck and all four parcels and the debt associated with them should be awarded to Respondent as his non-marital debt. Respondent acquired stocks worth $250,000.00 before the marriage and the stocks should be awarded to him as his non marital property.

(6) property acquired before the marriage, except as it relates to retirement plans that may have both marital and non-marital

characteristics;

(6.5) all property acquired by a spouse by the sole
use of non-marital property as collateral for a loan that then is used to
acquire property during the marriage; to the extent that the marital estate
repays any portion of the loan, it shall be considered a contribution from
the marital estate to the non-marital estate subject to reimbursement;

Respondent had several loans on his non-marital property and re-
negotiated and obtained new loans against his non-marital property
and used marital funds to pay down the principal on his non-marital
debt. The reduction in principle on his non-marital property should
be reimbursed to the marital estate.

(8) income from property acquired by a method listed
in paragraphs (1) through (7) of this subsection if the income is not
attributable to the personal effort of a spouse.

All the income from the farms is attributable to the personal efforts
of the Respondent and any value of any grain that was owned by the
Respondent on March 16, 2018, is marital income.

503 FACTORS TO BE CONSIDERED IN DIVISION OF PROPERTY

(1) each party's contribution to the acquisition,
preservation, or increase or decrease in value of the marital or non-
marital property, including (i) any decrease attributable to an advance from
the parties' marital estate under subsection (c-1)(2) of Section 501; (ii) the
contribution of a spouse as a homemaker or to the family unit; and (iii)
whether the contribution is after the commencement of a proceeding for
dissolution of marriage or declaration of invalidity of marriage;

The Petitioner contributed virtually all her income to the marriage.
Until March, 2016, Petitioner was employed part time but her disability
prevented her from continuing in the employment. The parties invested, by
way of Petitioner, using her credit cards in a home-based business
attempting to selling clothing online but the business was unsuccessful and
terminated. The Petitioner was solely responsible all the effort put into that
business. Petitioner was also solely responsible, except for a weekly house
cleaner, did the cooking, cleaning, laundry and all such duties associated
with the keeper of the marital residence, plus minor repairs. Respondent
did not personally perform and contribute to the upkeep of either residence.

Respondent caused a decrease in the value of the marital estate in

that the Respondent purchased a marital residence 5 months before the marriage and after the marriage the Respondent placed the property in his and Petitioner's name as tenants in the entirety. The residence was purchased for $287,500.00. The 3,200 square foot, 3-acre residence was too much for the parties to keep up and the property was placed for sale and the parties had a contract on the property for $260,000.00. The house did not pass the potability test of its water and the Respondent refused to spend $18,000.00 to have the well repaired and the contract was cancelled. In November 2017, the parties sold the residence for $215,000.00 dollars resulting in a net loss that the parties had to pay $46,000.00 to consummate the sale. There would have been a loss of about $6,000.00 if the well was put in and the sale for $260,000.00 consumated if the Respondent agreed to repair the well since that was a condition of the Buyer's obtaining their loan.

     (2) the dissipation by each party of the marital
property, provided that a party's claim of dissipation is subject to the following conditions:

     The marriage began to be irretrievably broken down in November 2015, when, after two months, the marriage was never consummated and the Respondent was reluctant to get any help as to why he could not consummate the marriage. Before the marriage, the Respondent assured the Petitioner that he had no problems with marital intimacy and the ability to consummate. Petitioner started to seek spiritual counseling about the marriage breaking down in October 2015 and subsequently sought therapeutic assistance regarding the marriage.

     Since November, 2015 the Respondent has repeatedly drawn out thousands of dollars in cash, presently totaling about $37,000.00, and never accounted for the use of the cash and also caused the loss of the sale of the previous residence costing the parties $46,000.00

     (3) the value of the property assigned to each spouse;

     The non-marital value that will be assigned to Petitioner is less than $10,000.00. The net non-marital value that will be assigned to the Respondent is $2,311,423.00.

     (4) the duration of the marriage;

     The marriage at present is 2 years 6 months.

     (5) the relevant economic circumstances of each
spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live

therein for reasonable periods, to the spouse having the primary residence
of the children;

To be determined based on other factors addressed.

(8) the age, health, station, occupation, amount and
sources of income, vocational skills, employability, estate,
liabilities, and needs of each of the parties;

Petitioner is disabled and receives SSDI of $11,252.00 yearly
Given Petitioner's health and age, the opportunity or ability of the
Petitioner to ever gain employment is nil.

Respondent is employed as a farmer and will have income from
Social security, his dividends, stocks and occupation as a farmer. He will
continue to have yearly income from his farms.

(11) the reasonable opportunity of each spouse for
future acquisition of capital assets and income; and

Petitioner has no reasonable opportunity for future acquisition of
income. Given Respondent's present income and net worth of
$2,311,423.00. The Respondent's economic future is secure and the
Respondent plans future acquisition of more farmland.

RECOMMENDED DIVISION OF PROPERTY AND DEBT

1. Both parties are awarded their non-marital property.

2. Based on the known values, the marital property should be
divided 65/35 with Petitioner receiving 65% of the marital property and
Respondent 35%.  Personal marital property is awarded the Petitioner as
per the attached Exhibit "A".

3. The Respondent can buy out the Petitioner the value of the
marital residence equaling $209,000. And pay Petitioner in cash to make
up for the balance of the 65% of $54,000.00.

4. Both parties assume the debts in their name except Petitioner
takes joint debt at Community State Bank.

5. Respondent contributes and pays the balance due to Petitioner's
attorneys fees and pays his own attorneys fees.

/s/ Thomas J. Laz_____

Thomas J. Laz, Attorney for Petitioner

Thomas J. Laz
Attorney for Petitioner
608 S. Washington St.
Naperville, Il. 60540
(630-717-7555

# LORRAINE JOACHIM'S REQUESTED MARITAL PROPERTY ITEMS

## Location as of April 9, 2018

House at 1248 Trail Drive, Dixon, IL 61021 and all appliances and furnishings that came with the house such as 2 bar stools in the kitchen and center island and cabinet piece in the basement now used as a bar.

Emma, the cat, and all her accessories

### *KITCHEN*

All wicker/glass dining table chair set, 1 table, 6 chairs and matching coffee table located in basement

Oak chair by kitchen desk

HP Desktop Computer and accessories, stamps.com printer and scale

Metal lantern on top of kitchen cabinet

Olive wood statue of Jesus, standing spice rack, all spices and flavoring extracts, Food processor, mixing bowls, bamboo salad bowl set, electric griddle, electric roaster, spinning salad bowl set, all baking pans, three divider crock pot, all grilling utensils, short juice glasses, Lenox service for 12 dishes and matching serving pieces, all Pfaltzgraff flatware.

### *LAUNDRY ROOM*

Two wall hangings, washer and dryer, metal storage cabinet

Mop, Swiffers, dusters, cleaning supplies

### *LIVING ROOM/FRONT FOYER*

LG Smart TV, Blue Ray DVD player, DVDs

Recliner couch

Tall lamp

Canvas wall hanging and Mary picture above organ

Shark Vacuum cleaner, Bissell carpet washer

## 2ND GUEST ROOM

Oak nightstand, all wall hangings

## MASTER BEDROOM

Red foot stool

## MASTER BATH

All Bathroom accessories and towels

## BASEMENT

All mannequins, dressing mirror, clothing hook, 5 single rack rolling clothes racks, iPad mini, Samsung Smartphone, hangers, overhead shop lamps, tripod, camera clicker, 3 room dividers, Ikea and Rubbermaid Clothing storage bags, desk supplies, and decor used for LuLaRoe Clothing Business, Keyboard bench, glass table lamp.

Dark wicker/glass table

Wire bird cage and décor and antique lantern

Antique table in basement foyer used for business

Shop vac, card table and chairs

Dehumidifier

Fireplace space heater

Freezer chest

4 Bar stools

All holiday decorations except for 4' decorated Christmas tree

## GARAGE New tool box

Rechargeable Black and Decker hedge trimmer and Black and Decker leaf blower

Grill supplies

Small gardening tools/supplies, watering cans, garden hose, plastic garden wagon

Car cleaners

All garden pots, chimes, shepherd hooks

## *BACKYARD/DECK/OUTDOORS*

Propane Grill, Jesus Statue

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
LEE COUNTY, ILLINOIS

IN RE THE MARRIAGE OF:               )
                                     )
LORRAINE JOACHIM,                    )
                                     )
        Petitioner,                  )
                                     )
vs.                                  )        No.  2017 D 70
                                     )
MARK JOACHIM,                        )
                                     )
        Respondent.                  )

**REVISED FINAL
PRETRIAL MEMORANDUM**

I.      MARK'S NON-MARITAL ESTATE

A.  REAL ESTATE

Prior to the marriage on September 12, 2015, MARK owned:

1.      FARMLAND (Values adjusted following a recent failed auction)

(i)      "MOMS" – 80 acres inherited upon Mother's death now valued at $920,000 – shed and farmland at Fairhaven and Coleta blacktop ($11,500 per acre).

(ii)      "HOME" – 82.44 acres purchased in 1991 now valued at $733,500 – shed, cattle facility at 199131 Coleta Road, Sterling ($9,500 per acre for 77 tillable acres).

(iii)      "PEUGH" – 80 acres purchased in 2015 now valued at $920,000 – house, 3 buildings at Fairhaven and Coleta ($11,500 per acre).

(iv)      "VOS" – 40 acres purchased in 2005 now valued at $460,000 on Penrose Road, Sterling ($11,500 per acre).

(v)      "HOLY LAND" – 25 acres purchased in 2014 now valued at $312,500 on St. Mary's Road, Sterling ($12,500 per acre).

Abstention
Exhibit
D

## B. PERSONAL PROPERTY

Machinery and Equipment          Approx. $300,000          (acquired various dates, all
                                                          before September 12, 2015)

## C. INVESTMENTS

Stock Portfolio          Approx. $250,000          (inherited 2005)

## D. CROP (2017 Stored)

19,000 bushels of stored corn from the 2017 crop year are in storage.  They are worth roughly $61,900.00.  They represent the return on my farmland, my equipment and my labor.  The value of the labor is $9,000.00.  The balance is non-marital.

## II.  MARITAL ESTATE

## A. REAL ESTATE

1.  STERLING HOME

Purchased for $287,087.60 on April 15, 2015.  Transferred to joint ownership.  Sold December 11, 2017 for $215,000 less closing costs and commission.  Borrowed $46,940.72 to cover loss (Sauk Valley Bank).  Full balance of $47,000.00 plus interest is still outstanding.

2.  DIXON HOME purchased June 2, 2017 for $209,000.

Borrowed $209,000 from Sauk Valley Bank – refinanced note of $820,000 combined premarital debt with camper plus operating losses during the marriage.  There is no equity in the Dixon home.

## B. CROP – 2017

The marital estate is entitled to a reimbursement from the 2017 crop due to my labor of $9,000.

## C. DEBT

1.  Loss on Sterling Home - $47,000 incurred during the marriage on the short sale.

2.  Borrowing for Dixon Home - $209,000.

3.  Community State Bank - $13,334.  (Borrowed to pay off Lorraine's premarital credit cards.)

2

"CONTRIBUTIONS"

PAID $19,014 on Lorraine's credit cards December 2015 (borrowed jointly from Community State Bank), then paid an additional $13,372 on subsequent credit card debt used to finance clothing business.

## RESPONDENT'S PROPOSED DISPOSITION

1.    MAINTENANCE – The marriage lasted 17 months from wedding to separation. Lorraine was receiving disability but employed at the time of the marriage and during the marriage.

NO MAINTENANCE

2.    PROPERTY - There will be no clear and convincing evidence under 503(c)(2)(A) of the marital estate contributing to the non-marital estate which would be reimbursable.

At the time of the marriage, Mark's aggregate debt was:

| | | |
|---|---|---|
| (a) | Farm Credit | $  566,305 |
| (b) | Milledgeville | 1,143,268 |
| | | $1,709,573 |

As of March 16, 2018:

| | | |
|---|---|---|
| (a) | Sauk Valley Bank | $  874,771.24 (consists of $618,033.62 farm, $209,000 Dixon Home and $47,737.47 Sterling Home) |
| (b) | Milledgeville | 1,112,888.00 |
| (c) | Community State Bank | 13,334.00 |
| | | $2,000,993.00 |

Increase in debt since marriage - $291,420

Marital Assets:

| | |
|---|---|
| Dixon Home | $209,000 |
| Reimbursement of Labor | 9,000 |
| | $218,000 |

3

Net loss during the marriage - $73,420

If, for example, 100% of the 2017 crop was considered marital with no return on the non-marital farmland and no return of the marital equipment, then the bank balances of $37,000 and crop stored of $61,900 would add $98,900 to the marital estate. After subtracting the added debt of $73,420, then the net marital estate would be, at most, $25,480. However, if the return on his 305 acres is only $83.54 per acre, then there is no marital estate to divide.

Attorneys' fees paid to Lorraine's attorneys are treated as an advance from her share of marital estate - $5,000.

## PERSONAL PROPERTY

During the marriage, Mark used his non-marital funds to purchase a sofa, bedroom set, two televisions and a washer-dryer. Those items should be awarded to him.

Respectfully submitted,

MARK JOACHIM, Respondent
By WARD, MURRAY, PACE & JOHNSON, P.C.
His Attorneys

By_____
Paul A. Osborn

Paul A. Osborn – ARDC #3127571
WARD, MURRAY, PACE & JOHNSON, P.C.
Attorneys for Respondent
202 East Fifth Street
P.O. Box 400
Sterling, IL  61081
(815) 625-8200
osborn@wmpj.com

4

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
LEE COUNTY, ILLINOIS

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| LORRAINE DYBA, f/k/a LORRAINE JOACHIM, | ) | |
| | ) | |
| Petitioner/Counter-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  2017 D 70 |
| | ) | |
| MARK JOACHIM, | ) | |
| | ) | |
| Respondent/Counter-Petitioner. | ) | |

## MARK JOACHIM'S CLOSING ARGUMENT

Respondent/Counter-Petitioner, MARK JOACHIM ("Mark"), for his closing argument, states:

### (1)  BACKGROUND

The record provides the basic chronology of the case as follows:

> September 12, 2015 – Wedding
> November 15, 2015 – Start of Irretrievable Breakdown
> February 4, 2017 – 6 months of separation before Petition
> August 4, 2017 – Petition for Dissolution
> March 16, 2018 – Judgment for Dissolution

At the time of the filing of the Petition, LORRAINE was 60 and MARK 67 years old.

The Court heard two days of evidence on April 26 and May 17, 2018.  Prior to the commencement of trial, both sides filed pretrial memos.  LORRAINE's Pretrial Memo included a statement of facts and a recommended division of property.  The memo made reference to only one section of the IMDMA – Section 503, which governs the division of property.  The word "maintenance" did not appear a single time in her pretrial memo.  Instead, LORRAINE's pretrial memo suggested that she would prove value of property in the marital estate of "in excess of

Abstention
Exhibit
E

$330,000 plus the value of any stored grain." Her memo sought cash equal to what she characterized as 65% of the marital estate - $263,000 payable in a lump sum.

By contrast, at the end of LORRAINE's testimony, she was asking for $209,000 "in lieu of maintenance" and $54,000 for dissipation, still $263,000.

## (2) MAINTENANCE

Maintenance is governed by 750 ILCS 5/504 which was extensively revised effective January 1, 2015. The revisions mandated the application of formulaic guidelines which dictated both the amount and duration of maintenance absent a finding of unusual circumstances. There is no authority in 504 for a Court to award a significant lump sum "in lieu of maintenance." The prior version of 504(b) included the phrase ". . . may be in gross or for fixed or indefinite periods of time . . . ." That clause, including the reference to maintenance in gross, is now gone.

Under current Section 504, an award of maintenance is a 2-step process. First, the Court must determine if any maintenance is appropriate, considering 14 factors, including the duration of the marriage, defined in 504(b-1)(1)(B) as the length from the wedding to the time the action was commenced. In this case, that duration is from 9/12/15 to 8/4/17, or, rounding up – 23 months. The duration of any maintenance to be awarded after a threshold finding that it is appropriate is, for a marriage of under 5 years, 20% of the length of the marriage – or 4.6 months. The amount of maintenance is calculated by taking 30% of MARK's annual income minus 20% of LORRAINE's annual income.

MARK's gross income was:

(a)     In 2015 (Counter-Petitioner's Exhibit #1):

$9,990 dividends, $600 rent and a $50,488 loss in farming – to be conservative, for this analysis, say his income was $10,000.

(b)     In 2016 (Counter-Petitioner's Exhibit #2), the only full year of marriage:

2

$9,386 dividends, $1,200 rent, $318 farm and $2,102 Social Security – Aggregate of $13,006.

(c)     In 2017 (Counter-Petitioner's Exhibit #12):

$9,928 dividends, $17,600 rent, $14,552 farm loss and $11,100 Social Security – Aggregate of $24,179.

LORRAINE's income was:

(a)     In 2015:

$13,068 church, $12,093 (SSDI) - $25,161

(b)     In 2016:

$13,428 church and $12,093 (SSDI) - $25,521

(c)     In 2017 (Counter-Respondent's Exhibit #36):

$2,929 church, $12,639 (SSDI) and $3,337 Lularose loss – Aggregate of $12,331

Using an average of the 3 years, LORRAINE would be paying maintenance to MARK.

EVEN IF, rather than using averages, we use MARK's highest year - $24,179 and LORRAINE's lowest year - $12,331, then guideline maintenance would be:

$24,179 x .3 = $7,253.70
$12,331 x .2 = <u>2,466.20</u>

$4,787.50 annual

That would be $399 per month for 4.6 months.

Pursuant to Section 504(b-1)(1.5), the Court expressly has the authority to include payments made during the pendency of the case as credits against both amounts and duration of guideline maintenance. It is not disputed that after the Petition was filed in August of 2017, LORRAINE's own Exhibits acknowledge that MARK paid LORRAINE's Blue Cross Blue Shield premium of $307 per month, and he paid her car payment of $260.71 for more than 5 months. He paid all the housing costs, including all the utilities. LORRAINE had paid the electric at the

Sterling home but paid nothing in Dixon. He paid the car insurance. Indeed, LORRAINE filed a Petition for Temporary Relief on February 20, 2018, asking the Court to order MARK to continue paying all those expenses, acknowledging he had paid them all from August 2017 to January 2018 – a period of 6 months of payments significantly exceeding $399 per month.

Consequently, regardless of the resolution of the threshold issue of whether there should be any maintenance at all (MARK notes that there is not a single appellate decision upholding maintenance in a marriage of less than 2 years), even if maintenance were appropriate, LORRAINE has already received more, both in amount and duration, than justified by the statutory guidelines.

There should be no maintenance, in gross or periodic.

### (3) PROPERTY

(a)      Dixon House – The evidence was that the parties contracted to buy the Dixon house, 1248 Trail Drive, Dixon, after an injury to LORRAINE's foot made navigating the Sterling home problematic. MARK had purchased the Sterling house before the marriage for $285,000 and gifted co-ownership to LORRAINE after the wedding. Closing on the Dixon home was on June 2, 2017, for $209,000. MARK applied for 100% conventional financing at both Sauk Valley Bank and First National Bank of Amboy. Both lenders denied the application which is not particularly surprising, since they owed money on their first home and they had no down payment for the second. MARK and LORRAINE were ultimately approved for a 60-day bridge loan at Sauk Valley Bank which was to enable Sauk to complete the due diligence to refinance MARK's premarital farm loans at Compeer. The $209,000 house loan and the Compeer loans were rolled into a single note in the amount of $810,000 in August 2017 – the same month LORRAINE filed the divorce petition. With interest, the balance on that Note as of the March 16, 2018 divorce Judgment was $827,033.62.

4

LORRAINE's pretrial memo postured that because the Dixon house debt was collateralized by MARK's non-marital farm that it was "paid off" and that because there was no mortgage, it was "free and clear." That is, of course, patently absurd, particularly when they were denied a conventional joint loan using only the house as collateral.

In the absence of extraordinary circumstances, there is no reason to separate an asset from its related debt. For example, LORRAINE incurred substantial credit card debt, after MARK twice paid it down to zero, to purchase clothing. Her credit card company did not take a lien on the clothes to secure repayment. But the asset and the debt are clearly directly related and, in the case of both the Dixon home and the clothing bought on credit, assets and related debt should be treated as such – regardless of the lender's preference for other collateral or no collateral at all.

There is no marital value in the Dixon home and a loss of $70,000 with a remaining debt of $47,000 on the Sterling home.

(b)      Crop Proceeds – LORRAINE's Pretrial Memo states that MARK used "in excess of $300,000 of marital income paying interest and principal on his non-marital property" and that ". . . about $90,000 in personal accounts consists of income from the sale of the 2017 farm crops." LORRAINE also included in her memo the contention "All the income from the farms is attributable to the personal efforts of the Respondent and any value of any grain owned by the Respondent on March 16, 2018 is marital income."

LORRAINE's contention begins and ends with one sentence from the applicable statute 503(b)(1) which starts the analysis by stating "all property acquired by either spouse after the marriage and before a judgment is presumed marital." However, the presumption is overcome by a showing that the property was acquired by a method listed in 503 subsection (a). Subsection (a) is the description of non-marital property which includes property acquired before the marriage and income from that property if the income is not attributable to the personal effort of a spouse.

Although Gary Wagenknecht testified about farming, it should not even require evidence to know that crops are produced as the result of a series of inputs:

1)    land;
2)    equipment;
3)    seed and chemical;
4)    rain and sun; and
5)    the farmer's work to plant and harvest, i.e. his "personal effort."

In the *Joachim* case, the evidence was undisputed and unequivocal – i.e. "clear and convincing."

The land was entirely MARK's before the marriage.

The equipment was entirely MARK's before the marriage.

The seed and chemicals are purchased every year by a combination of two things: (i) the prior year crop proceeds and (ii) borrowing.

The rain and sun are, to farmers' constant dismay, outside the control of everyone.

The value of the farmer's personal effort is relatively easily calculated.

Case law confirms the analysis that crop proceeds are entirely marital <u>only</u> when the land, the equipment, the capital and the personal effort are entirely marital.  There are four cases expected to be cited by both sides for opposite propositions, thus, requiring reading and consideration beyond a simple quote or headnote extracted out of context.

All four of the cases, upon careful reading, lead to the conclusion that MARK JOACHIM's crops are non-marital except for that small portion of their value derived from his personal labor. In chronological order of their publication :

6

1)      *In re Marriage of Patrick*, 233 Ill.App.3d 561, 599 N.E.2d 117, 174 Ill.Dec. 571 (4th Dis., 1992) - A 12 year marriage with no children where the H owned the marital home and had net worth as of the date of the wedding in 1978 of $270,950 which included $229,100 in farm equipment. By the time of trial his net worth was $346,500 and the trial Court found that the net worth difference was the marital estate, even though most of his premarital farm equipment had been traded for marital equipment. H rented his farmland. The trial court's decision to narrowly look at only the change in net worth was reversed. In considering the character and value of the crop, grown on rented land using what the appellate court expressly found to be marital equipment, the Court concluded that the H's net income from the farm operation was marital, specifically noting "including those forms of his labors –such as crops in storage that have not yet been sold." Then added, "To be consistent, we point out that the operating loan of $115,000 constitutes marital debt and must be considered". The point was that the emphasis in characterizing crops as marital was on "the forms of his labors". Not the gross crop value, but the net after accounting for the use of rented ground lowering the net value and after expressly concluding that the equipment was marital. *Patrick* is not particularly helpful since there was no nonmarital farmland or equipment to change the analysis. In *Joachim*, a significant part of the crop value must be considered as a return to the value of the land (admittedly non-marital), the use of the equipment (also non-marital), as well as a much smaller component attributed to "the forms of his labors".

2)      *In re Marriage of Heinze* – LORRAINE's take away from Heinze will be the quote that "future income is a marital asset where the income derives from efforts or products produced during the marriage". But *Heinze* doesn't involve crops or farming. It involves books written during a marriage which were expected to generate royalties in the future. LORRAINE will quote language which is actually extracted from a citation to a Utah case (*Dunn v. Dunn*) also dealing with future book royalty income. The *Heinze* Court treated the right to future royalties for a book written during the marriage as if they were pension payments awarded incident to work during the marriage. The case has nothing to do with the characterization of crops grown on non-marital land using non-marital equipment and marital labors. *Heinze* has no analysis about any premarital assets effecting the nature of the future income. The only possible relevance of the *Heinze* case to

7

the *Joachim* facts is the fact that even though the future royalties were characterized as marital, the allocation of that marital asset was divided 75-25 net after taxes by the appellate court in favor of the spouse who was the author, rather than 50-50 because only the wife had contributed time and effort to the creation and marketing of the books. In *Joachim* only one spouse put any labor into the production of the crop.

3)   *In re Marriage of Mohr*, 260 Ill.App.3d 98, 631 N.E.2d 785, 197 Ill.Dec. 563 (4th Dis., 1994) – This is a critical case because (a) the husband owned 80 acres before the marriage, leased 300 acres and bought 40 acres during the marriage;  (b) the marriage was a relatively brief 7 years ; (c) this was a late marriage with both having kids from a prior marriage; (d) the wife was a retail clerk earning between $10,000 and $12,000 per year and (e) the issue was the allocation of harvested, stored crops for the current year.  The trial court, which was affirmed on appeal, expressly awarded H 100% of the value of the crop grown on the 80 acres of nonmarital land and $25,000 from the other marital and leased land.  The Court made a point to emphasize that the entire farm business was run through a joint account, which is not what MARK JOACHIM did, never using the joint account for the farm business.  The opinion, citing the *Patrick* case, discusses over 2 paragraphs that crops grown even on non-marital land "can be considered" in determining marital income and marital property because even crops grown on nonmarital land require a contribution of labor and that while a wife's salary as a clerk would reflect the value of her labor, the value of the husband's labors would be deferred until the crop proceeds are realized.

4)   *In re Marriage of Bowlby*, 338 Ill.App.3d 720, 789 N.E.2d 366, 273 Ill.Dec. 466 (5th Dis., 2003) – An 8-year marriage, H was a farmer and the trial occurred while a crop was in the ground on leased farmland.  Evidence showed that the 2 prior years of crop sales were between $156,000 and $168,000, and government payments were received of $25,000 but net profit was consistently under $13,200.  W argued that she was entitled to half of her calculation of the crop value net-after-expenses of $124,000.  After broad citations to *Heinze* and *Mohr*, the *Bowlby* Court wrote, "the future income from the growing crop derived from Matthew's efforts is marital property".  Under LORRAINE's analysis that crops are 100% marital period, why would the appellate court in *Bowlby* add the qualifying language "derived from Matthew's efforts".  The trial

8

court and the appellate court concluded that given the history of the net profit from farming and given the scope of debt assumed, the H should be awarded the entire crop in the ground subject to the duty to pay W $25,000 associated with H's personal efforts. There was no indication that there was any evidence about the H's hours working the fields or the fair value of his time.

The critical element LORRAINE omits when arguing these crop cases is that the statutory basis for the analysis is not limited to 503(b) but must consider Section 503(a)(8) which expands the list of assets characterized as non-marital to income from non-marital property. LORRAINE's position necessarily assumes that crops are generated exclusively from labor, which is simply untrue. There is a return associated with the use of the land and the equipment. Similar analysis is done when a spouse is employed by a non-marital business which generates both a salary for the spouse as employee and a profit associated with the ownership of the business, whether in the form of rent, K-1 income or dividends. There are a number of 503(a)(8) cases which consistently hold that the only portion of such income which is marital is the W-2, salary or wages from the spouse's personal labor. *In re Marriage of Perlmutter*, 225 Ill.App.3d 362; *In re Marriage of Landfield*, 209 Ill.App.3d 678; *In re Marriage of Samardzija* 365 Ill.App.3d 702; *In re Marriage of Morse*, 143 Ill.App.3d 855; *In re Marriage of Steinberg*, 299 Ill.App.3d 603 and *In re Marriage of Blunda*, 299 Ill.App. 3d 855.

A case of particular interest in researching 503(a) (8) and the interrelated 503(c)(2) which entitles the marital estate to reimbursement for the increase in value of non-marital assets clearly and convincingly attributed to the personal efforts of a spouse, is *In re Marriage of Werries*, 247 Ill.App.3d 639, 616 N.E.2d 1379, 186 Ill.Dec. 747 (4th Dis., 1993). Larry and Donna Werries were married in 1967 and their divorce trial was in 1990. Prior to the marriage, Larry farmed with his father and brother in a partnership. Donna argued that she was entitled to some part of the farm business. The Appellate Court examined 503(a) (7), (a)(8) and (c)(2). It concluded that (i) the interest in his farm business was non-marital acquired in part before the marriage and in part as a gift from Larry's father (again like the *Joachim* facts) ; and (ii) the reduction in debt attributed to partnership crop sales during the marriage against the business was also non-marital. Prior to the marriage, Larry borrowed against the farm business and repaid that borrowing during the

9

marriage. His share of the farm partnership increased in value during the marriage from $25,000 to $675,000, because of a combination of land appreciating in value and debt being paid down from the profit of the business. The Court ruled that even though the loan was repaid during the marriage from crop proceeds and the partnership value increased dramatically, that Donna did not prove by clear and convincing evidence how much the marital estate contributed to the debt repayment, noting that she was required to prove specific contributions directly to specific payments. Additionally, the Court noted that even if she could provide detailed tracing, it would not matter because during the marriage, the parties were already adequately compensated for Larry's personal efforts with regard to the farm business, from the salary or W-2 income he received from the partnership, as distinct from the profit or return on the investment, which was non-marital under 503(a)(8).

Gary Wagenknecht testified that all of the labor to plant, cultivate and harvest Mark's acreage would be 412 hours at $15 per hour - $6,180. He also testified that the fair market rent of the farm ground was between $280 and $300 per acre.

In *Joachim*, LORRAINE has no ability to trace MARK's personal efforts to specific dollars in the crop then to prove that those exact dollars were used to repay farm debt, which LORRAINE must do by clear and convincing evidence. It is just as possible, indeed likely, that the small portion of crop proceeds derived from MARK's labors was used to pay the mortgage payments on two houses, the house taxes, utilities and insurance, and all their other living expenses, including the loan on her car, her car insurance, her medical insurance, and even the debt on her premarital and marital credit cards. All of these payments benefited the marriage, and using her own demonstrative exhibits, total well over $60,000 over the 23 months of the marriage and another $25,000 since the case was filed last August, so the marital estate has already been reimbursed from the marital contribution in the form of the personal efforts MARK invested in crops.

In addition, because of poor commodity prices and new debt during the marriage attributed to the loss on the Sterling house and all the credit card debt of LORRAINE, net debt increased during the marriage, so even though principal was paid down, new borrowing replaced it

10

both for operating expenses and for living expenses. In support, attached are three summaries of the debt to Compeer, Milledgeville State Bank and Sauk Valley Bank comparing debt as of the date of the wedding, to the date of the Judgment. The numbers used from those financial institutions were from printouts attached to MARK's financial affidavit. None of those numbers were ever disputed.

Consequently, LORRAINE's two theories about the crop proceeds: (A) the crops are marital property and (B) the use of crop proceeds to reduce debt principal creating a right of reimbursement; are both without merit both factually and legally.

At best, the crops produced in 2016 and 2017 might have a marital value of between $6,000 and $9,000 per year – but a lot more than that was already spent on marital living expenses. Consequently, the proceeds of the 2017 crop in the bank when the Judgment was entered and the crop still in storage all in MARK's name alone should be awarded to MARK as his non-marital proceeds of his non-marital assets.

Corresponding to the analysis that the crop proceeds were largely non-marital is that while some was transmuted by gift to marital when MARK deposited his divided income and his crop proceeds into the joint account, that account was spent down to zero and closed. It was never used to pay any farm expenses, only living expenses.

(c)     Dissipation

LORRAINE filed a "Notice of Dissipation." The Notice states that the marriage began an irretrievable breakdown 9 weeks after the wedding, on November 15, 2015, and itemizes the following:

2015

14 bank withdrawals consisting of:

1.      $150 to EGBLC ("Ehrmann, Gehlbach, et al.);
2.      3 cash withdrawals totaling $600 dated before November 15, 2015; and

11

3.      10 cash withdrawals totaling $2,565 after November 15, 2015, including 3 on
        December 11, 2015 of $1,165.00.

2016

50 bank withdrawals consisting of:

1.      $251.25 to EGBLC (1);
2.      $600 to LORRAINE;
3.      $278.34 to Candlelight Inn; and
4.      46 cash withdrawals totaling $12,300, an average of $236.54 per week.

2017

52 bank withdrawals consisting of:

1.      $2,708.50 to "Merts and Merts" and "Merks & Merks" (3);
2.      $2,500 to "WMPJ Attorneys Fees";
3.      $300 to "Comprehensive PR"; and
4.      46 cash withdrawals totaling $12,800, an average of $246.15 per week.

The Notice also claims that a loss on the sale of a house of almost $47,000 qualifies as
dissipation.

"Dissipation" is "the use of marital funds by one party for their own benefit for a purpose
unrelated to the marriage." *In re Marriage of Holthaus*, 387 Ill.App.3d 367, 899 N.E.2d 355, 326,
326 Ill.Dec. 138 (2nd Dis., 2008) citing *In re Marriage of O'Neill*, 138 Ill.2d 487, 497, 150 Ill.Dec.
607, 563 N.E.2d 494 (1990).

There is no suggestion that MARK exclusively "benefitted" from any of the claimed
expenditures.  No spending on gifts or vacations, no purchases of jewelry or cars, no expensive
hobbies or vacations.  The facts were simple, clear and convincing:

1.      MARK has always paid his business expenses by check.  He has also always paid his
personal expenses with cash, including $50 per week for a house cleaner, all his groceries,
restaurant meals, the gas in his car, his clothes, medications, haircuts and his weekly $20 into the
offering plate at church.  The $300 he takes from his bank account in cash roughly every week goes

12

to those expenses.  He explained that he did not itemize those expenses in his first financial
affidavit because in the 65 years before he was married, no bank had ever asked for an itemization
of his living expenses.  He did not think he needed to report that detail for this divorce since they
had only been married a few months.  He also did not retain receipts.  At no point did
LORRAINE ever contest his explanation except to demand receipts.

2.      MARK's payments of attorneys' fees are not dissipation.  By statute (Section 501(c-
1)(2)), they are advances from the marital estate, as is the $5,000 paid to LORRAINE's attorney.
However, since there is no net marital estate, all his attorneys' fees are coming from his non-
marital estate – not dissipating the marital estate.  The $5,000 paid to Mr. Laz is an advance from
LORRAINE's share of the marital estate, to the extent that there is one.

3.      The $70,000 loss on the sale of the Sterling home is partially reflected in the
$47,737 still owed to Sauk Valley Bank.  MARK did not benefit and he certainly did not cause the
problems with the water resulting in the loss of a buyer.  The cost of extending the casing on the
well, which John Rosengren testified would have been $17,000, provided no assurance that the
bacteria issue would be solved.  Even the Buyers rejected a credit equal to that amount as a
solution.  Indeed, in retrospect, the $17,000 would have been wasted since the bacteria issue
ultimately resolved itself without a new well.

Consequently, there is no dissipation.

(d)      Personal Property

As often happens in divorce cases, parties cannot even agree on the simplest, least valuable
items.  Of course each wants those items each owned before they met.  In this case, there were
some items purchased after they met but before they got married.  Some items were wedding gifts
and some acquired by purchase after the wedding.  MARK's proposal is simple – each takes what
he or she purchased.  Of the gifts received, MARK would like the cross (on LORRAINE's Exhibit
39) she describes as a gift to her which MARK refuted as being a gift from his long-time pastor to

13

both of them. All the other items on her 16-page list, Exhibit 39, she may have even though some were clearly marital.

Conversely, her Exhibit 38, purporting to be marital property, is more vigorously disputed. Under cross-examination, LORRAINE acknowledged that MARK bought the recliner couch on that list before the wedding. Indeed MARK purchased virtually all the items on Exhibit 38. Exhibit 38 includes four items LORRAINE purchased. She may have those. All the other items on that list, and any items not on her list, including the washer-dryer, the big TV and the bedroom set, all of which MARK bought before the wedding, should be awarded to MARK. LORRAINE did not request it either in Exhibit 38 or 39, but she should be awarded the $16,000 in clothes she purchased to get MARK's attention. These purchases should be accompanied by the related credit card debt.

    (e)    Toyota

The Toyota is titled in LORRAINE's name. MARK made almost all the payments including the $3,000 down payment. Some payments were from his account, some were paid from the joint account. While MARK concedes that the Toyota should be awarded to LORRAINE, it should certainly be subject to the remaining debt. MARK is not seeking any reimbursement to the marital estate's reduction of the principal on the debt against that car, even though it may have come from his dividends or crop income. To the extent that the marital estate is entitled to reimbursement, LORRAINE may keep it.

    (f)    Other Debt

MARK will pay all the farm related debt to Sauk Valley Bank and Milledgeville State Bank. He will pay the $47,000 loss on the Sterling house to Sauk Valley Bank. He will pay the balance on the joint Community State Bank loan incurred to pay off LORRAINE's credit cards. In addition to her car debt, she should pay her own credit cards.

14

## SUMMARY

MARK's Revised Pretrial Memorandum analysis was not changed by any evidence admitted.

He should be awarded his five non-marital farms, his non-marital farm equipment, his non-marital stock portfolio and the non-marital proceeds of his farm business reflected in his bank accounts and grain inventory. He should be awarded the remaining crop inventory and the balance in his bank accounts at the time of divorce which came from his dividends and crop proceeds.

MARK's aggregate debt on the date of the wedding was $1,709,573 between Milledgeville State Bank and Compeer. On the date of the divorce, the debt was $2,000,993, an increase in debt of $291,420, during the course of under 23 months.

The increased debt was attributed to:

1.    $47,737.47 owed to Sauk on the Note borrowed to pay off the Milledgeville Bank loan on the Sterling home, which was sold at a loss of $70,000;

2.    $209,000 owed to Sauk to refinance the full borrowed cost of the Dixon home;

3.    $13,334 which was the balance still owed to Community State Bank on a loan taken out in the third month of the marriage of $19,014 to pay off LORRAINE's premarital credit cards; and

4.    the balance of $34,682 was accrued interest on all the debt which had to be paid in March and April from the cash and crop on hand as of March 16, 2018.

MARK asks for the personal property on Exhibit 38 except the four listed items purchased by LORRAINE.

LORRAINE would receive no maintenance – she would retain the $5,000 payment she got for fees, the payments reducing her credit card debt and car debt, her personal property and no other payments or assets.

Respectfully submitted,

_____

Paul A. Osborn
Attorney for Respondent/Counter-Petitioner

Paul A. Osborn – ARDC #3127571
WARD, MURRAY, PACE & JOHNSON, P.C.
Attorneys for Respondent/Counter-Petitioner
202 East Fifth Street
P.O. Box 400
Sterling, IL  61081
(815) 625-8200
osborn@wmpj.com

16

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 Proceeding |
| LORRAINE ADRIENNE DYBA, | Case Number: 18-81138 |
| Debtor | Judge Thomas M. Lynch |

### <u>CERTIFICATE OF SERVICE</u>

**TO:**   Ms. Lorraine A. Dyba, P.O. Box 964, Dixon, IL  61021

   The undersigned, an attorney, hereby certifies that I have served a copy of the attached <u>Motion to Abstain</u> upon the Party listed above by causing the same to be mailed in a properly addressed envelope, by first class mail, postage prepaid, from 202 East 5th Street, Sterling, IL, before 5:00 p.m. on June 14, 2018.

        /s/ Paul A. Osborn
        Paul A. Osborn – ARDC #3127571
        WARD, MURRAY, PACE & JOHNSON, P.C.
        Attorney for Movant, Mark Joachim
        202 East Fifth Street, P.O. Box 400
        Sterling, IL  61081-0400
        (815) 625-8200
        osborn@wmpj.com